**Sherwin L. STEINBERG, Ida G. Steinberg, Plaintiffs,**

v.

**UNITED STATES of America, Defendants.**

**No. 84–0864C(3).**

United States District Court, E.D. Missouri, E.D.

Feb. 22, 1985.

As Amended March 12, 1985.

Blumenfeld, Sandweiss, Marx, Tureen, Ponfil & Kaskowitz, P.C., Philip G. Kaplan, St. Louis, Mo., for plaintiffs.

Ludwig H. Adams & Mary Frances Clark, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., Wesley Weidemeyer, Asst. U.S. Atty., St. Louis, Mo., for defendants.

## MEMORANDUM

HUNGATE, District Judge.

This matter is before the Court on the parties' cross-motions for summary judgment. Plaintiffs' motion for partial summary judgment will be treated as a motion for summary judgment because the parties have stipulated to the facts and only questions of law remain before the Court.

Plaintiffs bring this action pursuant to 28 U.S.C. § 1346(a)(1) to recover income taxes they allege were illegally assessed and collected.

On December 27, 1984, counsel for the parties appeared before the Court and oral argument was heard on the unsettled questions of law. The parties have stipulated to the following facts giving rise to this dispute.

### Stipulation of Facts

1. Plaintiffs are husband and wife and reside in the County of St. Louis, State of Missouri. This action was commenced against defendant United States of America, seeking a refund of $7,090.00 of income tax paid for 1978.

2. At all times pertinent to this action, plaintiff Sherwin L. Steinberg was vice-president of sales of Carboline Company (Carboline). At that time, the common stock of Carboline was traded on the over-the-counter market.

3. On February 6, 1974, pursuant to a qualified stock option plan under Section 422(b) of the Internal Revenue Code, Carboline granted plaintiff a written stock option to purchase 5,000 shares of its common stock at $7.75 per share. The option price was equal to 100 percent of the price at which Carboline's stock was traded on the over-the-counter market on the date the option was granted. The option could not be exercised until February 8, 1976, and continued for a period of three years or until plaintiff terminated his employment with Carboline.

4. In order for the transaction to be exempt from the registration requirements of the Securities Act of 1933, plaintiff, at the time the option was granted to him, executed an "investment letter." Under the pertinent rulings of the Securities and Exchange Commission, the effect of the investment letter was to prohibit plaintiff, for a period of two years after the stock was purchased, from selling the acquired shares except in a private placement, unless a registration statement was in effect with respect to the shares or certain other conditions were met. No registration statement was ever in effect with respect to the option stock.

5. In February of 1976, there was a three for two stock split of Carboline common stock. Due to that split, plaintiff's option to purchase Carboline stock was amended and the number of shares subject to the option was increased to 7,500. Since the number of shares increased by one-third, the option price was reduced by one-third, to $5.17 per share.

6. On February 13, 1978, plaintiff exercised his rights under the option by purchasing 7,500 shares of Carboline common stock. The market value on the over-the-

counter market of these shares on the date of purchase was $141,525.00. The option price paid by plaintiff was $38,775.00.

7. The Carboline common stock received upon exercise of the option had a legend imprinted on the common stock certificates restricting the sale of the stock for a period of two years.

8. For 1978, Carboline, as plaintiff's employer, filed with the Internal Revenue Service a Form 3921, Exercise of a Qualified or Restricted Stock Option, reporting $102,-750.00 as a tax preference item for plaintiff. The amount of $102,750.00 represents the difference between the option price paid by plaintiff and the market value of the shares on the date of exercise. The market value was determined by computing the mean of the bid and asked price in the over-the-counter market of Carboline common stock. A copy of the Form 3921 was filed by plaintiff with his 1978 federal income tax return.

9. In a typed statement accompanying his federal income tax return for 1978, plaintiff acknowledged that Carboline had filed the Form 3921 with the Internal Revenue Service, but alleged that the fair market value of the option stock exercised did not exceed the option price of the stock.

10. The Commissioner determined that the fair market value of the option stock was the mean between the bid and asked prices of stock on the date of the exercise of the option. The Commissioner claimed that the difference between that value and the option price was an item of tax preference. Thus, a deficiency was determined under the minimum tax provisions by including the $102,750.00 as a tax preference item.

11. Plaintiffs paid the deficiency on October 14, 1980.

12. On October 12, 1982, plaintiffs timely filed a claim for the refund of $7,090.00. The claim for refund asserted that the amount of minimum tax due for 1978 should be $6,448.00, not $13,578.00. Plaintiffs asserted that the market value of the stock should be reduced by one-third to reflect restrictions on the sale of the stock.

13. Plaintiffs received an Internal Revenue Service notice dated June 22, 1983, allowing $7,076.51 of their claim and disallowing $13.49.

14. Thereafter, the Internal Revenue Service sent a notice dated December 22, 1983, allowing $13.49 of plaintiffs' claim and disallowing $7,076.51.

The parties do not dispute that plaintiffs' exercise of the stock option resulted in an item of tax preference subject to the minimum tax provisions of 26 U.S.C. § 56. At the time this transaction took place, Section 57 of the Internal Revenue Code provided that the measure of plaintiffs' item of tax preference resulting from the exercise of a qualified stock option is "the amount by which the *fair market value* of the share at the time of exercise exceeds the option price." (emphasis added). 26 U.S.C. § 57(a)(6).

Plaintiffs argue that the rate at which comparable stock was being traded on the day the option was exercised is an inappropriate measure of the fair market value of their stock because it does not take into consideration the restrictions on its transfer.

Defendant's authority for determining the fair market value of plaintiffs' stock, without regard to the restrictions thereon, is Treasury Regulation § 1.57–1(f)(3) which provides that such restrictions should not be considered unless, by their terms, they will not lapse.

Plaintiffs rely on two decisions of the tax courts which hold, in relevant part, that the treasury regulation relied upon by defendant is inconsistent with the meaning of fair market value as contemplated by the Internal Revenue Code, and is therefore invalid, and any reduction in value caused by restrictions on transfer (even if temporary) are properly considered when determining the fair market value of such stock. *Gresham v. Commissioner*, 79 T.C. 322 (1982); *McDonald v. Commissioner*, 83 T.C. T.C.M. (P–H) ¶ 83,197 (1983).

Defendant further points out that Congress has recently adopted the position of the disputed treasury regulation disregarding temporary restrictions on transfer when determining fair market value in circumstances such as this. Deficit Reduction Act, Pub.L. No. 98–369 (amending IRC § 57(a)). Plaintiffs counter that Congress's apparent ratification of defendant's position is not retroactive.

The parties have further agreed that if the Court determines that Treasury Regulations Section 1.57–1(f)(3) is invalid or inapplicable to this case, the fair market value of the Carboline stock in question would be determined by discounting the mean trading price of the stock on the date of the exercise of the option by one-third, and plaintiffs will be entitled to the amount prayed for in their petition.

Since this Court heard oral argument on this matter, the United States Court of Appeals for the Tenth Circuit reviewed the position taken by the Tax Court in the *Gresham* case which was relied on by plaintiffs. *Estate of Gresham v. Commissioner*, 752 F.2d 518 (10th Cir.1985). In a well-reasoned opinion, the Tenth Circuit agreed with the Tax Court and found that Treasury Regulations Section 1.57–1(f)(3) is invalid or inapplicable in cases such as the one before this Court. The appellate court held that the traditional willing buyer/willing seller test of fair market value is the appropriate measure in cases arising before 26 U.S.C. § 57 was amended. *Id.*, at 523.

■ After careful consideration of the arguments and memoranda of the parties, the Court is persuaded that the position taken by the Tax Court and the Tenth Circuit on this issue represents the better law. Accordingly, the Court finds that Treasury Regulations Section 1.57–1(f)(3) is inapplicable to this case.

■ As the parties have stipulated to the result should the Court so find, plaintiffs' motion for summary judgment will be granted in the amount prayed for in plaintiffs' petition.

## ORDER

A memorandum dated this day is hereby incorporated into and made a part of this order.

IT IS HEREBY ORDERED that defendant's motion for summary judgment be and the same is denied.

IT IS HEREBY FURTHER ORDERED that plaintiffs' motion for summary judgment be and the same is granted.

IT IS HEREBY FURTHER ORDERED that judgment be and the same is entered in favor of plaintiffs in the amount of $7,076.51 plus prejudgment interest at the rate of 9.09% per annum, and costs.

## AMENDED ORDER

Comes now the Court nunc pro tunc and sua sponte, and amends its order of February 22, 1985, as follows:

IT IS HEREBY ORDERED that prejudgment interest be and the same is awarded to plaintiffs in the amount established by the Secretary, pursuant to 26 U.S.C. § 6621.